210 P.3d 458
Ryan YUSEM, Petitioner
v.
The PEOPLE of the State of Colorado, Respondent.
No. 08SC526.
Supreme Court of Colorado, En Banc.
June 22, 2009.

 Douglas K. Wilson, Colorado State Public Defender, Pamela A. Dayton, Deputy State Public Defender, Denver, CO, Attorneys for Petitioner.
 John W. Suthers, Attorney General, Susan E. Friedman, Assistant Attorney General, Denver, CO, Attorneys for Respondent.
 Justice RICE delivered the Opinion of the Court.
 We granted certiorari1 to review the decision of the court of appeals upholding the admission of prior act evidence. See People v. Yusem, No. 06CA930, 2008 WL 2058269 (Colo.App. May 15, 2008) (not selected for official publication). Ryan Yusem was convicted of felony menacing for pulling a gun against the driver of a van who Yusem thought was threatening to run him down. Yusem claimed he used the gun in self-defense. The trial court admitted evidence of a prior act where Yusem, a deputy sheriff, yelled at and caused an apartment manager to feel intimidated while Yusem was off-duty but wearing his service weapon. We hold that the trial court erroneously admitted the prior act evidence and that the error is not harmless. Accordingly, we reverse the court of appeals' decision, vacate Yusem's conviction, and remand to the trial court for a new trial.
I. Factual and Procedural History
 Defendant, Ryan Yusem, appeals his conviction entered upon a jury verdict for felony menacing, a class five felony, arguing that the trial court erred in admitting prior act evidence under CRE 404(b). Because the admissibility of CRE 404(b) evidence is a fact-intensive question, it is necessary to outline the facts surrounding the charged offenses and the prior act, and also the trial court's instructions to the jury about the limited purposes for which the prior act evidence could be considered.
 The charges arose from an incident that occurred near Yusem's apartment building on the evening of April 6, 2005, in Adams County. At the time, Yusem was a deputy with the Denver Sheriff's Department and was living with his wife, a Westminster police officer, and their children. Earlier that evening,
a concerned neighbor approached Yusem and his wife to tell them she believed a drug deal would be occurring later that night; she was upset because the possible drug deal involved her former brother-in-law. She believed the dealers would be driving a large black or white SUV. Yusem and his wife told the neighbor, as they had in the past, that they had no authority to intervene because they were not employed in that jurisdiction and that she should call 911. However, both Yusem and his wife decided that if they saw anything suspicious they would either call the police or write down the license plate number of the vehicle.
 At approximately 9:00 p.m., Yusem was standing on the balcony of his third-floor apartment when he saw a large white SUV with blacked-out windows pull into the parking lot. The SUV made a number of turns in the parking lot, occasionally stopping in what Yusem felt was his direct line of sight. Yusem believed the occupant of the SUV was stalking him, which made him nervous. Finally, the SUV left the parking lot. Yusem then realized that he needed to walk his three dogs. Because the neighbor told him the drug dealers might be armed and because he was scared by the actions of the driver of the white SUV, he put on his bullet proof vest. Yusem testified that he always wore his service weapon, even while off duty, so his gun was already in its holster on his hip.
 The testimony about what happened next is disputed. Yusem testified that as soon as he left the apartment with the dogs, the white SUV returned. The SUV continued to make unusual turns and stops. Feeling more nervous, Yusem quickly took his dogs through an alley to an open space near the fire lane-a concrete road that ran the length of the backside of the apartment complex. When Yusem reached the fire lane, which he described as poorly lit, he noticed a minivan at the far end with a person leaning into the passenger window conversing with the occupant. Yusem thought it was unusual for the van to be parked in the fire lane — a secluded area behind the complex — and so thought he might be witnessing a drug deal. While watching his dogs run, Yusem heard an engine whine and looked up to see the minivan coming right at him, traveling at what he thought was a high rate of speed. Yusem jumped out of the way, threw his left hand up, drew his weapon, and starting yelling for the vehicle to stop and back up. Yusem testified that he announced that he was a Denver Sheriff and held the gun in the "ready position" — aimed downward toward where the van met the pavement. The van stopped approximately five feet away, Yusem heard a male voice and then a female voice, and the van eventually backed down the fire lane and drove away. Concluding the danger had passed, Yusem re-holstered his gun and used his cell phone to call the non-emergency line for the police.
 On the other hand, Mr. Longsine, the victim of the charged offenses and a maintenance technician for the complex, testified that he was stopped in his maroon minivan at the far end of the fire lane; his wife and young child were in the van with him. After speaking with a fellow maintenance technician out of the passenger-side window for a few minutes, Mr. Longsine said he took his foot off the brake and began to roll forward at about five miles per hour. He testified that Yusem was 90 feet away when he began rolling forward. When he was approximately 30 feet2 from Yusem, Mr. Longsine stopped the van because Yusem had "downed"3 one of his dogs in the middle of the fire lane. At that point, Yusem approached the van, drew his gun, pointed it toward Mr. Longsine, and yelled at Mr. Longsine to "back the fuck up." Mr. Longsine complied and backed down the fire lane. He then drove to the apartment manager's office to call the police.
 Yusem was charged with felony menacing4
and prohibited use of a weapon.5 Before trial, the prosecution moved to introduce evidence of a prior act under CRE 404(b). Yusem objected to the admission of this evidence. The prior incident involved the apartment manager, Karen Eckhardt. She testified that approximately eight months before the incident with Mr. Longsine, Yusem came to talk to her about getting a new apartment because there was water damage in his current apartment. He was wearing plain clothes, had a gun in its holster on his hip, and was very angry. Ms. Eckhardt testified that Yusem yelled at her about the condition of his apartment, but never touched, talked about, or otherwise referred to his gun. Nonetheless, Ms. Eckhardt felt intimidated by the presence of the gun.
 Two judges presided during Yusem's case. The first trial judge ruled on the pre-trial matters, including the CRE 404(b) motion, and a second trial judge presided over the trial. After a pre-trial hearing, the first trial judge admitted the CRE 404(b) evidence for the purposes requested by the prosecutor. The second trial judge modified the initial ruling on the CRE 404(b) evidence, identifying a narrower list of purposes for which the evidence could be used.6 The following instruction was read to the jury before Ms. Eckhardt's testimony and was also provided in the jury instructions:
 Certain evidence may be admitted for a particular purpose only, and for no other. The testimony you are about to hear from witness Karen Eckhardt with regard to a prior encounter with the defendant is such evidence. It may be used as evidence for one or more of the following purposes: (1) to establish the defendant's state of mind, motive, or knowledge on April 6, 2005; (2) to establish that the defendant acted in the absence of mistake or accident on April 6, 2005; and (3) to establish that the defendant did not act in self-defense on April 6, 2005; and you should consider it as evidence for no other purpose.
 In rebuttal closing argument, the prosecutor explained to the jury how they were to consider the evidence of the prior encounter with the apartment manager. The prosecutor argued that during the prior act "[Yusem's] weapon was used to intimidate and [his] weapon was used to control exactly as it was on April 6, 2005."
 The jury found Yusem guilty of felony menacing, but found him not guilty of prohibited use of a weapon. Yusem appealed.
 The majority for the court of appeals found the prior act evidence admissible, but for slightly different reasons than the trial court. Yusem, No. 06CA930, slip op. at 6. Applying the four-part Spoto7 test, the court of appeals held, first, that Yusem's mental states, both for the charged offense (knowingly) and his claim of self-defense (reasonable belief), were material facts. Second, the evidence was logically relevant to his mental state in pulling the gun out of its holster. Third, the fact that Yusem had displayed his gun in an angry confrontation with the apartment manager was probative — independent of the inference of bad character — of why Yusem pulled his gun from its holster and to whether his beliefs about use of force were reasonable. Finally, the majority reasoned that because the prior act was useful to the jury in determining whether the degree of force Yusem used was reasonably necessary, its probative value was not outweighed by unfair prejudice. Accordingly, the court of appeals affirmed the conviction.
 The dissenting judge concluded the trial court abused its discretion by admitting the prior act evidence and also concluded that the error was not harmless. Yusem, No. 06CA930, slip op. at 11 (Dailey, J., dissenting). The dissenting judge reasoned that the prior act evidence did not satisfy the third and fourth prongs of the Spoto test. The evidence was relevant to show only one thing: that because Yusem bullied someone on a prior occasion, he most likely bullied the victim on April 6th too. Such use of the
evidence amounted to impermissible use of a prior act to prove that Yusem has a bad character and acted in conformity therewith. Additionally, the prior act evidence had minimal probative value and the potential for unfair prejudice was significant. Accordingly, the dissenting judge would have reversed the conviction and remanded for a new trial.
 Yusem appealed to this court, arguing that both the trial court and court of appeals erred in admitting the evidence. We agree. The prior act evidence fails to satisfy the third and fourth prongs of the Spoto test and is therefore inadmissible under CRE 404(b). Moreover, the error in admitting the evidence is not harmless. Thus, we reverse and remand with instructions to vacate Yusem's conviction for felony menacing.
II. CRE 404(b) Evidence
 All relevant evidence is admissible unless otherwise provided by constitution, statute, or rule. CRE 402. Relevant evidence is that evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Relevant evidence can be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice. CRE 403. Additionally, relevant evidence can be excluded if it is used to prove the character of a person in order to show that he acted in conformity with that character on a particular occasion. CRE 404(b).
 Notwithstanding these limitations on the admissibility of relevant evidence, evidence of other crimes, wrongs, or acts is admissible if used for purposes independent of an inference of bad character. Id. We have analyzed the applicability of the relevancy rules to other crime, wrong, or act evidence and have set forth a four-part test to determine the admissibility of such evidence. People v. Spoto, 795 P.2d 1314, 1318 (Colo.1990); see also People v. Rath, 44 P.3d 1033, 1038 (Colo.2002). First, the evidence must relate to a material fact; that is, a fact "`that is of consequence to determination of the action.'" Spoto, 795 P.2d at 1318 (quoting CRE 401). Second, the evidence must be logically relevant, meaning it has "`any tendency to make the existence of [the material fact] more probable or less probable than it would be without the evidence.'" Id. (alteration in original) (quoting CRE 401). Third, the logical relevance must be independent of the prohibited intermediate inference that the defendant committed the crime charged because of the likelihood that he acted in conformity with his bad character. Id. Fourth, the probative value of the evidence must substantially outweigh the danger of unfair prejudice. Id. (citing CRE 403).
 Trial courts are accorded substantial discretion when deciding whether to admit evidence of other acts. Douglas v. People, 969 P.2d 1201, 1205 (Colo.1999); People v. Snyder, 874 P.2d 1076, 1080 (Colo.1994). We review a trial court's decision in this area for abuse of discretion and will only disturb that ruling on appeal if it was manifestly arbitrary, unreasonable, or unfair. Masters v. People, 58 P.3d 979, 1001 (Colo.2002); Snyder, 874 P.2d at 1080.
III. Application of Spoto
 The prior act evidence in this case was admitted for a number of purposes. The trial court admitted the evidence for these reasons: (1) to establish the defendant's state of mind, motive, or knowledge; (2) to establish that the defendant acted in the absence of mistake or accident; and (3) to establish that the defendant did not act in self-defense. The court of appeals upheld the admission of the evidence because it could be used to prove two of those purposes: to rebut Yusem's claim of self-defense and to establish Yusem's mental state. As such, at various phases of the proceedings, the prior act evidence was held admissible to prove mental state, motive, knowledge, and absence of mistake or accident and to rebut self-defense.
 In seeking to admit other crime, wrong, or act evidence, we have required the prosecution to articulate "a precise evidential hypothesis by which a material fact can be
permissibly inferred."8 Rath, 44 P.3d at 1039; Spoto, 795 P.2d at 1319. Said differently, the prosecution must identify the specific purpose for which the evidence will be used and explain how the proffered evidence establishes that purpose independent of the inference forbidden by CRE 404(b).
 In this case, the People never articulated a precise evidential hypothesis explaining how the prior act evidence tended to prove motive, knowledge, or absence of mistake. In addition, the prior act evidence was offered9 and admitted for purposes that were carelessly grouped together, without consideration of whether the prior act evidence was admissible for each purpose. For instance, mental state, motive and knowledge — while all potentially probative of mens rea — are separate purposes that should be individually analyzed under Spoto.
 Despite the People's failure to articulate why the evidence was admissible to prove certain purposes, we review all the purposes that were accepted by the trial court. We explain in turn why the prior act evidence should not have been admitted for any of these purposes.
1. Material Fact
 The first prong of the Spoto test is the easiest to satisfy. This prong considers not the substance of the prior act evidence, but the fact in the case for which the evidence is offered to prove. See Spoto, 795 P.2d at 1318. This prong does not ask a court to determine whether the evidence offered helps to prove that fact, but only requires the court to decide whether the fact is of consequence to the determination of the action.10 Generally, CRE 404(b) evidence can be used to prove two types of facts: (1) actual elements of the charged offense, also called ultimate facts, or (2) intermediate facts, themselves probative of ultimate facts. Rath, 44 P.3d at 1040. So long as the purposes for which the prior act evidence is offered are somehow probative of an ultimate fact, the first prong is satisfied.
 All of the listed purposes relate to Yusem's mental state: whether he knowingly attempted to intimidate the victim; why he was motivated to use his weapon; whether his actions were accidental or purposeful; and whether his belief that he needed to defend himself was reasonable. Yusem's mental state is a fact that the prosecution had to prove or disprove in order to convict. Douglas, 969 P.2d at 1206; People v. Willner, 879 P.2d 19, 26 (Colo.1994). Thus, the defendant's mental state is undeniably a material fact and the prior act evidence was offered as relating to that fact. See Spoto, 795 P.2d at 1318. Moreover, we have previously held that CRE 404(b) evidence can properly be used to rebut a claim of self-defense. E.g., Douglas, 969 P.2d at 1206; Willner, 879 P.2d at 26. Accordingly, the listed purposes satisfy the first prong of the Spoto test.11
2. Logical Relevance
 To satisfy the second prong of the Spoto analysis, the offering party need only show logical relevance — that the prior act evidence has any tendency to make the existence
of the material fact more or less probable than without the evidence.
 We begin by determining the inferences that can be drawn from the prior act evidence. The People contend that a jury could infer from Yusem's prior conduct that he is the type of person who displays his weapon to intimidate and control others. We are reluctant to agree with this assessment because the inference advocated by the People requires us to speculate. The inference suggested by the People can only be drawn from the evidence if Yusem purposefully displayed his weapon in order to intimidate the apartment manager. However, we do not know Yusem's state of mind at the time, and therefore must rely entirely on his actions to determine what he was thinking. While a juror could conclude that Yusem intentionally displayed his gun despite the absence of any reference to it, a juror could just as easily conclude that Yusem merely wore his gun as a matter of habit and therefore did not use the gun in any way. Despite our concerns with such conjecture about Yusem's state of mind during the prior act, for purposes of our analysis we give the evidence the maximum value requested by the People. Accordingly, the prior act could show that Yusem displayed his gun while agitated and yelling at an apartment manager in order to intimidate and control. Relying on this interpretation as the foundation of our analysis, we now consider whether the prior act evidence is logically relevant to the purposes for which it was offered.
 We first address the stated purposes that the evidence was used to show Yusem's mental state and to rebut his claim of self-defense. When prior act evidence is used to rebut a claim of self-defense against the charge of felony menacing, the question for the jury is whether the defendant used the gun to defend himself12 or whether he acted only to menace his victim.13 Douglas, 969 P.2d at 1207. Thus, we combine the analysis of these purposes because the defendant's mental state and rebutting self-defense are two sides of the same inquiry.
 Based on the inferences that can be drawn from the prior act, we find the evidence is logically relevant to prove Yusem's mental state. If Yusem displayed his gun in the past to intimidate and control, that evidence has some tendency to make it more probable that he acted to menace rather than defend on April 6th. See Douglas, 969 P.2d at 1206; Spoto, 795 P.2d at 1319. Because the prior act evidence is logically relevant to demonstrate Yusem's mental state, it necessarily is relevant to rebut his claim of self-defense.
 In the same manner, the prior act evidence has at least some tendency to establish Yusem's motive. The prior act evidence suggests that because Yusem displayed his gun in the past, he was motivated to brandish his gun, not in self-defense, but in order to intimidate and control the van driver.
 Similarly, the evidence arguably has some tendency to prove knowledge. "Knowledge" generally refers to what a defendant knew or should have known based on prior acts or experiences, and such knowledge can then be used to prove a material fact. For example, the fact that a defendant possessed crack cocaine on a prior occasion made it more probable that he knew the substance he possessed in the charged offense looked like crack cocaine. People v. Taylor, 131 P.3d 1158, 1166 (Colo.App.2005). In the same way, a defendant's familiarity with survival knives was admissible to show his knowledge about the type of knife used to commit a murder. Masters, 58 P.3d at 1000. Giving the prior act evidence its maximum value, Yusem's prior act has some tendency to show
that he was aware that displaying his gun intimidated people.
 However, the prior act evidence is not logically relevant to show absence of mistake or accident. One could argue that the prior act rebuts a claim that Yusem accidentally pulled his gun on April 6th and therefore cannot be guilty of menacing. However, the prior act does not show that Yusem pulls out his gun when he wants to intimidate someone. In the prior act, the apartment manager felt intimidated even though Yusem did not touch his gun. As such, the evidence is not probative of whether Yusem accidentally used his gun on April 6th. See Spoto, 795 P.2d at 1319 (concluding that a prior act where the defendant pulled a gun but did not use it does not rebut a claim of accidental shooting because the prior act "does not suggest that when [the defendant] pulls a gun he intends to use it").
 We conclude the prior act evidence has at least some tendency to prove mental state, motive, and knowledge and to rebut self-defense, but is not relevant to prove absence of mistake or accident. Therefore, the prior act evidence satisfies the second prong of the Spoto test as to some of the listed purposes.
3. Inference Independent of Bad Character
 The more complex question is whether the prior act evidence is logically relevant independent of the inference prohibited by CRE 404(b). Evidence of prior acts is inadmissible "if the logical relevance of the proffered evidence depends upon an inference that a person who has engaged in such misconduct has a bad character and the further inference that the defendant therefore engaged in the wrongful conduct at issue." Spoto, 795 P.2d at 1318. Focusing on the maximum value that can be given the prior act evidence, we find the logical relevance is not independent of an inference of bad character.14
 The People contend the evidence is relevant to prove Yusem's mental state — whether he intended to menace the victim or acted in self-defense — and therefore is independent of the prohibited inference that Yusem has a bad character and acted in conformity with that character. We disagree. A jury cannot reasonably conclude that Yusem was more likely to menace the van driver and less likely to act in self-defense without relying on the inference that Yusem bullied someone in the past while wearing a gun and so likely bullied someone again by brandishing a gun. Thus, the inference, at best, that may be drawn from the prior act is impossible to distinguish from the inference that Yusem has a bad character.
 Our holdings in Douglas and Willner, where we upheld the admission of prior act evidence to rebut claims of self-defense, are distinguishable and therefore not at odds with this conclusion. In Douglas, the defendant was charged with felony menacing for pointing a loaded gun at and threatening to kill the victim and the victim's thirteen-year-old son. 969 P.2d at 1202. The confrontation occurred after the victim approached the defendant, who was standing on his porch, to attempt to resolve a past-due loan the victim had made to the defendant. Id. We upheld the admission of two prior instances of conduct to show the defendant's mental state and to rebut the claim of self-defense. Id. The first incident involved the defendant pointing a gun at and threatening to kill his then girlfriend without provocation. Id. at 1203. In the second incident, the defendant threatened and chased his neighbors with a gun, again without provocation. Id. Both prior instances and the charged offense involved a specific tendency that rebutted the claim of self-defense: defendant was the type of person who threatened people with a gun without provocation and in the absence of danger to himself.
 The defendant in Willner was charged with first degree murder after shooting the person who was driving away in his truck in an effort to repossess it. 879 P.2d at 21. Defendant claimed that he shot the driver to prevent being run over. Id. To rebut this claim, we upheld the admission of two prior acts. The first incident occurred when the owner of a body shop attempted to repossess the defendant's van after the defendant refused to pay for body work. Id. at 25-26. In an effort to prevent repossession, the defendant ran out of his apartment with a handgun and fired several shots. Id. at 26. The second incident involved the defendant firing six shots at a van after the occupants stole a Christmas tree off the defendant's tree lot. Id. This evidence demonstrated that the defendant had a specific tendency to fire his gun, in the absence of any danger to himself, at people who were taking his property, which rebutted his claim of self-defense when he shot a man who was repossessing his truck.
 These cases are distinguishable from Yusem's case for a number of reasons. First, the strength of the inferences derived from the prior acts was considerable: Douglas and Willner used or fired their guns, so a jury was not left to speculate about what role the gun played in the prior acts. In contrast, the jury in Yusem's case was forced to speculate about whether Yusem purposefully displayed his gun. Additionally, in both Douglas and Willner there were multiple prior acts, which helped to reinforce the tendency the evidence was offered to prove.15 Finally, the prior acts had a high degree of similarity to the defendant's behavior in the charged offense, which may have made it easier for the jury to identify the probative value of the evidence. While we recognize that CRE 404(b) does not require similarity, Rath, 44 P.3d at 1041, the lack of similarity between Yusem's prior act and the charged offense further supports our conclusion that the prior act evidence is not relevant independent of the inference that Yusem is a bully.
 In sum, the prior act evidence was admissible in both Douglas and Willner because it demonstrated the defendant's tendency to use a gun in a particular manner in specific circumstances, and therefore rebutted the claim that the defendant acted in self-defense when similar circumstances arose. Additionally, because the prior acts demonstrated a specific tendency, the relevance of the evidence could be separated from the improper inference that the defendant had a bad character. Therefore, the evidence was relevant independent of the prohibited inference of bad character. In contrast, the prior act evidence in Yusem's case does not show a specific tendency that can be separated from the prohibited inference that Yusem bullied in the past and therefore menaced in this case.
4. CRE 403
 The fourth prong of the Spoto analysis requires us to determine, under CRE 403, if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Masters, 58 P.3d at 1001. A trial court's admission of evidence under the fourth prong will not be disturbed absent an abuse of discretion. Id. In deference to the trial court's discretion, we must assume the maximum probative value and the minimum unfair prejudice to be given the evidence. Id.
 The admission of prior act evidence always has a potential for prejudice, Rath, 44 P.3d at 1041, so it is only unfair prejudice substantially outweighing the probative value which permits exclusion, Masters, 58 P.3d at 1001. Moreover, while we recognize that CRE 403 favors the admission of evidence, we emphasize that the rule is an important tool to "`exclud[e] matters of scant or cumulative probative force ....'" Id. (quoting United States v. McRae, 593 F.2d 700, 707 (5th Cir.1979)). We have previously explained:
 The balancing required by [CRE] 403 contemplates the consideration of such factors as the importance of the fact of consequence
for which the evidence is offered, the strength and length of the chain of inferences necessary to establish the fact of consequence, the availability of alternative means of proof, whether the fact of consequence for which the evidence is offered is being disputed, and, if appropriate, the potential effectiveness of a limiting instruction in the event of admission.
 Vialpando v. People, 727 P.2d 1090, 1096 (Colo.1986). Weighing these considerations, we conclude the prior act evidence offers little probative value and is substantially outweighed by the danger of unfair prejudice.
 With respect to its probative value, we first note that the prior act evidence offers minimal probative value to prove the listed purposes of mental state, motive, and knowledge and to rebut self-defense because these purposes were either not disputed or could be proved by alternative methods. Yusem's mental state and knowledge were not disputed in this case, and evidence offered to prove undisputed facts has marginal probative value. See Masters, 58 P.3d at 1001; Vialpando, 727 P.2d at 1096. Yusem admitted, by his testimony and by claiming self-defense, that he knowingly committed the charged offense. See People v. Dover, 790 P.2d 834, 835 (Colo.1990) ("An affirmative defense is essentially an admission of the crime charged, but seeks to justify, excuse or mitigate the defendant's conduct."). Thus, the incremental probative value of the prior act evidence to prove that fact is low. Similarly, Yusem never claimed he did not know using a gun would intimidate; to the contrary, his testimony indicates he used his gun with the goal of intimidating and controlling — to stop the van that he believed was threatening to run him down. Thus, his knowledge or understanding of the effect of using a gun was easily established without the prior act evidence. As such, the prior act evidence is not needed to prove the listed purposes of state of mind and knowledge.
 Second, the People had ample evidence to prove Yusem's mental state and motive and to rebut his claim of self-defense without the prior act evidence. See Masters, 58 P.3d at 1001. Yusem testified that he pulled his gun and yelled at the driver of the van in an attempt to get the van driver to back up. These actions demonstrate he knowingly attempted to put the van driver in fear in order to force the driver to comply. Furthermore, the van driver's testimony provided the jury with evidence to conclude that Yusem was unreasonable in believing he needed to defend himself with a gun. The driver testified that he was rolling forward down the fire lane at five miles per hour and stopped 30 feet from Yusem. Such facts suggest that Yusem overreacted, helping the People disprove his claim of self-defense. Thus, the probative force of the prior act evidence is weak in light of the testimony presented at trial, and the prior act evidence is accordingly not needed to prove the listed purposes of state of mind and motive and to rebut self-defense.
 Third, the probative value provided by the evidence is further diminished because the chain of inferences derived from the prior act evidence is weak. We cannot say that the prior act unquestionably shows that Yusem purposefully displayed his gun when yelling at the apartment manager: a juror could just as easily conclude that Yusem did not rely on his gun in any way during the incident. In other words, the evidence provides weak support for the inference that Yusem previously used a gun to intimidate and control. Thus, the strength of the inference does not favor admissibility under CRE 403.
 Turning to the danger of unfair prejudice, we begin by revisiting our conclusion with respect to the third prong of the Spoto analysis. There, we noted that a jury could not reasonably conclude that Yusem was more likely to menace and less likely to act in self-defense without relying on the inference that Yusem bullied in the past and so likely menaced in this case. As such, the unfair prejudice of the evidence overwhelms the probative value. See, e.g., Masters, 58 P.3d at 995 ("When character evidence is offered to show action in conformity therewith, this danger substantially outweighs its probative value for this purpose.").
 Even if the evidence could be considered admissible for some narrow purpose completely independent of the character trait discussed above, the potential for unfair prejudice
is overwhelming for additional reasons. The facts surrounding the claim of self-defense were disputed and Yusem told a plausible version of events. Thus, whether the jury believed Yusem's account of the encounter was critical to the outcome of the case. When evidence was admitted about Yusem's prior anger toward the apartment manager while wearing his service weapon, he was portrayed as an aggressive, harassing man with a gun. This undermines Yusem's claim that he was fearful the van would run him down and that he needed to use his gun to defend himself. The evidence "presented the grave danger that it would be employed by the jury to infer bad character and action taken in conformity with bad character." Spoto, 795 P.2d at 1320-21.
 Moreover, the prior act "`evidence [injected] collateral issues into [this] case which [were] not unlikely to confuse and lead astray the jury....'" Spoto, 795 P.2d at 1320 (quoting Stull v. People, 140 Colo. 278, 284, 344 P.2d 455, 458 (1959), superseded by rule, CRE 404(b)). Specifically, the prior act evidence was introduced through the apartment manager, who was also working on April 6th when the van driver came to the office to call the police. As a result, she provided testimony about both the prior act and the charged offense. This common thread, despite the fact that the two events are otherwise entirely distinct, could confuse the jury about the proper role of the prior act evidence.
 Finally, the jury instruction did nothing to alleviate the potential for prejudice in this case. See Spoto, 795 P.2d at 1321 (explaining that a trial court can reduce the probability of prejudice by carefully instructing the jury). As previously discussed, the prior act evidence was not relevant to prove absence of mistake or accident, so at the very least the jury should not have been instructed as to this purpose. Likewise, the listed purposes of mental state, motive, knowledge, and to rebut self-defense either did not need to be proved or could be proved through alternative means. "In the absence of a focus on a particular purpose for which the testimony might arguably be relevant, [a trial court's instruction does] nothing to alleviate the risk that the jury would use the testimony for the prohibited purpose of inferring that [the defendant] has a bad character and acted in conformity therewith...." Id. Just as the People are required to articulate a precise evidential hypothesis of admissibility, the trial court should take care to admit the evidence for specific purposes and to properly instruct the jury as to those purposes.
 Based on these considerations, we conclude the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, and the evidence therefore does not satisfy the fourth prong of the Spoto analysis. The trial court abused its discretion in admitting the evidence.
V. Reversible Error
 Where a defendant objects to the admission of evidence,16 we review for harmless error. People v. Garcia, 28 P.3d 340, 344 (Colo.2001). Under this standard, reversal is required unless the error does not affect the substantial rights of the accused. Garcia, 28 P.3d at 344; CRE 103(a); Crim. P. 52(a). We have previously explained:
 The proper inquiry in determining a harmless error question is not whether there was sufficient evidence to support the verdict without the improperly admitted evidence, but, rather, whether the error substantially influenced the verdict or affected the fairness of the trial proceedings. If a reviewing court can say with fair assurance that, in light of the entire record of the trial, the error did not substantially influence the verdict or impair the fairness of the trial, the error may properly be deemed harmless.
 People v. Gaffney, 769 P.2d 1081, 1088 (Colo. 1989) (internal citations removed); see also Masters, 58 P.3d at 1002-03. Put differently, Yusem is entitled to reversal if there is "`a reasonable probability that the error contributed to the defendant's conviction.'" Garcia,
28 P.3d at 344 (quoting Salcedo v. People, 999 P.2d 833, 841 (Colo.2000)).
 We conclude there is a reasonable probability that the prior act evidence contributed to Yusem's conviction. As discussed above, Yusem's credibility with the jury was pivotal. Moreover, the evidence did not overwhelming favor the People: the case was dependent on the credibility of conflicting witness testimony. Accordingly, prejudicial evidence that discredited Yusem's testimony may have unfairly tipped the scales in favor of the People. Additionally, the jury instructions did nothing to limit the prejudice and arguably served only to confuse the jury and permit them to rely on the inference of bad character. Accordingly, we cannot say with fair assurance that the error in this case did not substantially influence the verdict.
V. Conclusion
 We hold that the trial court erred in admitting evidence of Yusem's prior encounter with an apartment manager. Moreover, that error affected Yusem's substantial rights and therefore is not harmless. We reverse the court of appeals, vacate Yusem's conviction for felony menacing, and remand to the trial court for a new trial.
 Justice COATS dissents, and Justice EID joins in the dissent.
 Justice COATS, dissenting.
 While it would also have been within the trial court's discretion to exclude evidence of the defendant's prior encounter with his landlord, I do not agree that admitting this evidence amounted to an abuse of discretion. The admission of uncharged misconduct is fundamentally a question of relevance, as to which a trial court must be entitled (at least in the absence procedural error) to considerable discretion. Because I believe the majority's overly mechanical application of the standards we have developed for evaluating uncharged misconduct evidence not only infringes on that discretion but is also likely to mislead trial courts and unnecessarily deprive fact-finders of valuable, relevant evidence in future cases, I respectfully dissent.
 Although I disagree with a number of specific points in the majority analysis, central to my objections is its treatment of the third of the considerations we articulated in People v. Spoto.1 Like other evidence generally, in order to be admissible, evidence of uncharged misconduct must be probative of a material issue according to CRE 402 (that is, it must be logically relevant), without its probative value being substantially outweighed by the danger of unfair prejudice. See CRE 403. Uncharged misconduct, however, presents a special case for this determination of "legal" relevance because by definition it evidences bad behavior, creating the risk that a trier of fact will be moved to punish the defendant for reasons other than proof that he committed the crimes with which he is charged. While an inference that the defendant probably committed a particular bad act because such an act would be in conformity with a bad character trait evidenced by his prior conduct may, in some small measure, be probative of an element of a charged offense, the rules of evidence always consider, simply as a matter of policy, that the limited probative value of such an inference is always substantially outweighed by its inherent risk of unfair prejudice. See People v. Rath, 44 P.3d 1033, 1038 (Colo. 2002); CRE 404(b).
 In Spoto we tried to capture the essence of this balancing of logical relevance and unfair prejudice in the context of uncharged misconduct by dividing it into four separate factors, or considerations. 795 P.2d at 1318. Although the other three are all included in the ultimate balance required by CRE 403, we found it pedagogically useful to identify the logical steps in the process and note the one reason, specified in CRE 404(b), for which this kind of evidence could never be admissible. We did not intend to imply, however, that uncharged misconduct evidence sufficiently probative for some other reason must be excluded merely because it also demonstrates bad character.
 In concluding that the logical relevance of the prior act evidence admitted in this case "is not independent of an inference of bad
character," and that any inference drawn from evidence of the prior act "is impossible to distinguish from the inference that Yusem has a bad character," maj. op. at 466, the majority conflates the prohibition against admitting evidence of bad character to prove particular bad conduct and the required assessment of a prior bad act's probativeness for other, legitimate purposes. Uncharged misconduct evidence contains, by definition, an element of unfair prejudice. By emphasizing in Spoto's third enumerated consideration that the logical relevance of such evidence must be independent of an intermediate inference from bad character, we intended merely that the assessment of probativeness, for purposes of the balancing of probative value and prejudicial effect required of every determination of legal relevance, see CRE 403, be independent of any inference from bad character — not that in order to be considered proper, any other purpose must be free of contamination with bad character.
 I believe this confusion is exacerbated by the majority's myopic analysis of the purposes for which the prior act evidence in this case could even be considered logically relevant. The defendant did not deny and there was not the slightest question but that he intentionally put others in fear for their lives by threatening them with his service weapon. The only question raised by his assertion of self-defense was whether the defendant reasonably believed it was necessary to defend himself from the use of unlawful physical force by another and whether the degree of force he used was appropriate.
 The purposes for which the prior act was offered and admitted here clearly went to the issue of self-defense, and that issue alone. The trial court instructed the jury as to these purposes in terms virtually identical to those enumerated in CRE 404(b), which were never intended to be precise terms of art or to be mutually exclusive or collectively exhaustive. See Rath, 44 P.3d at 1038. Those purposes with which the majority takes exception as being unnecessary or completely irrelevant, like motive, mental state, knowledge, and absence of mistake or accident, are appropriate ways of instructing a jury that it can consider uncharged misconduct evidence in determining whether the defendant actually believed his threatening behavior was necessary, and if so, whether that belief was the result of unreasonable accident or mistake on his part. To suggest, as does the majority, that these terms are relevant only to prove the mens rea of an offense, and not to disprove legal justification or excuse as well, is both hyper-technical and without support in either rule or case law.
 Furthermore, the prosecution did not rely solely on this general expression of purposes in the jury instruction but adequately articulated its evidential hypothesis — that a demonstration of the defendant's willingness to use the authority of his office, including using his service weapon, to intimidate and control on a prior occasion made it more likely that he did so on this occasion without legal justification. Although the lack of uniqueness or even similarity in these acts fairly raises a question about the probativeness of the evidence for its offered purpose, this evidential hypothesis is a far cry from merely painting the defendant as a bully; and as we have often held, a far lesser degree of similarity is required to prove intent or awareness than to establish identity. Rath, 44 P.3d at 1042.
 In any event, the question posed by admission of the prior act evidence in this case is quite simply whether the trial court abused its discretion by failing to find that the probative value of the evidence for this limited purpose was substantially outweighed by its danger of unfair prejudice. The deference to which such an evidentiary ruling is entitled required the majority to assume the maximum amount of probative value possible and the minimum amount of prejudicial effect. Rath, 44 P.3d at 1043. Whether or not I might suspect that I would have ruled differently had I been the trial judge, I believe the formal distinction between the respective roles of trial and appellate courts with regard to evidentiary matters in general, and matters of relevance in particular, exists for good reason and compels affirmance in this case.
 Because I believe the trial court's ruling fell within the limits of its discretion and because I consider the bulk of the majority's
analysis both unnecessary and potentially misleading, I respectfully dissent.
 I am authorized to state that Justice EID joins in this dissent.
1. We granted certiorari on the following question:
 1. Whether the court of appeals erred in upholding the trial court's admission of prior act evidence because, as the dissenting judge correctly concluded, the prior act evidence had no relevance independent of an inference of bad character and was unfairly prejudicial.
2. Longsine's wife offered contradictory information as to the distance. At trial, she testified that the van stopped 30 to 35 feet from Yusem. However, in a taped interview with the investigating officer, Mrs. Longsine said the van stopped approximately 5 feet from Yusem.
3. Based on the testimony, "downing" a dog means to command the dog to sit or lie down by giving a hand signal.
4. § 18-3-206(1), C.R.S. (2005).
5. § 18-12-106(1)(a), C.R.S. (2005).
6. Although the court of appeals analyzed the first trial judge's ruling, we see no need to review purposes for admissibility that were modified before trial and therefore not instructed to the jury. This opinion will review only those purposes that were instructed to the jury.
7. People v. Spoto, 795 P.2d 1314 (Colo. 1990).
8. We also note that if CRE 404(b) evidence is admitted, "the prosecution may not exploit [the prohibited] inference but must restrict its use of the evidence to the purposes for which it was admitted." People v. Willner, 879 P.2d 19, 27 n. 22 (Colo.1994).
9. In the People's CRE 404(b) motion, they offered the evidence for the following purposes: guilty state of mind, motive, knowledge, identity, opportunity, lack of fabrication, and absence of mistake or accident.
10. Although the concept of materiality is subsumed within the notion of logical relevance under CRE 401 — suggesting the first and second prongs of the Spoto test are the same inquiry — "we have found it helpful in emphasizing the obligation of the prosecution to offer (and the court to admit) other-crimes evidence only for specific purposes, to distinguish the two concepts." People v. Rath, 44 P.3d 1033, 1038 n. 3 (Colo.2002).
11. One could argue that some of the listed purposes are not disputed and therefore do not need to be proved. However, we have previously recognized that whether a fact is disputed goes to its probative value, "but it does not make the fact itself any less material...." Rath, 44 P.3d at 1040 n. 4; see also Masters v. People, 58 P.3d 979, 1001 (Colo.2002). Accordingly, whether a material fact is disputed is not part of the inquiry under the first prong of the Spoto test.
12. The mental state for self-defense is whether the defendant acted to defend himself from what he reasonably believed to be the use or imminent use of unlawful physical force by the victim and whether he used a degree of force which he reasonably believed to be necessary for that purpose. CJI-Crim. 7:16.
13. The mental state for menacing is knowingly. A person acts knowingly with respect to conduct or to a circumstance described by statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is practically certain to cause the result. CJI-Crim. 6:01.
14. It is difficult in this case to identify precisely what the bad character trait is. One possibility is that Yusem has a criminal propensity because his previous display of a gun to intimidate is arguably criminal behavior. Another possibility, as suggested by the dissenting court of appeals judge and adopted by Yusem, is that Yusem has a propensity to be aggressive or to bully people. A final possibility, articulated by the People at the CRE 404(b) hearing but abandoned at trial, is that Yusem abuses a position of power. We agree with Yusem and the dissenting court of appeals judge that the character trait is one of aggression or bullying.
15. There is no requirement of multiple acts to admit evidence under CRE 404(b). Nonetheless, more than one act can be helpful when the People are asking the jury to infer that the defendant has a tendency or is the "type of person" to act in a certain way.
16. Erroneous admission of CRE 404(b) evidence is not error of constitutional dimension. See Masters, 58 P.3d at 1002-03.
1. 795 P.2d 1314, 1318 (Colo.1990).