COLORADO COURT OF APPEALS 2016COA179

Court of Appeals No. 13CA1600
Jefferson County District Court No. 12CR1974
Honorable Christie A. Bachmeyer, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Corey Anthony Lopez,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE BOORAS
Terry and Berger, JJ., concur

Announced December 15, 2016

Cynthia H. Coffman, Attorney General, Kevin E. McReynolds, Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Audrey E. Bianco, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Corey Anthony Lopez, appeals the trial court's judgment of conviction entered on jury verdicts finding him guilty of one count each of first degree murder — after deliberation; attempted first degree murder — after deliberation; reckless endangerment; and third degree assault.  We affirm.

## I.  Background

¶ 2    In 2012, defendant's girlfriend, R.B., was at a bar drinking with her mother, brother, and a friend.  At some point, defendant joined them.

¶ 3    Later in the evening, the group left the bar and continued drinking at R.B.'s friend's home.  After some additional drinking, defendant told R.B. that he wanted to go home because he had to get up early for work the next day.  However, R.B. told defendant she did not want to leave, and the two began arguing.  Eventually, R.B. left her friend's house, got into her brother's car, and asked him to take her home.  As defendant attempted to convince R.B. to come home with him, R.B.'s friend intervened, asking defendant to stop bothering R.B.  At that point, defendant began arguing with R.B.'s friend and, as the argument escalated, defendant became so

1

angry that he punched out his car window. R.B. then exited her brother's vehicle and left the scene on foot.

¶ 4 The police responded to a noise complaint at R.B.'s friend's house soon thereafter. After the police left, R.B.'s mother and brother headed home, and defendant joined them.

¶ 5 When the group arrived at the home, R.B. was asleep on the couch. At approximately 5 a.m., defendant and R.B. traveled to defendant's apartment. Later that afternoon, defendant called 911 to report that R.B. was not breathing. When the police and paramedics arrived, R.B. was dead.

¶ 6 In interviews with the police, defendant claimed that he and R.B. had had consensual "make-up" sex, and, at some point, he was behind R.B. with his arms draped over and around her shoulders. He said that after they were done, he cuddled with R.B. and went to sleep. In explaining why R.B. was fully clothed when the police and paramedics arrived, he said that he and R.B. had both worn their underwear during sex and that he did not want anyone to see R.B. in her underwear.

¶ 7 As the police waited on R.B.'s autopsy reports, they were contacted by defendant's ex-girlfriend, S.E. S.E. told the police that

2

based on her experience dating defendant, she believed defendant may have strangled R.B.  Her belief was based on an incident in 2008 when, according to S.E., defendant nearly strangled her to death during an argument, only to be saved by a friend who had forced her way into S.E. and defendant's bedroom.

¶ 8     The autopsy report later showed that R.B. had died of manual strangulation.

¶ 9     The district attorney subsequently charged defendant with first degree murder — after deliberation as to R.B. and attempted first degree murder — after deliberation as to S.E.  At the end of trial, at defendant's request, the court also instructed the jury on the lesser nonincluded offenses of reckless endangerment and third degree assault as to S.E.  The jury convicted defendant of (1) first degree murder — after deliberation as to R.B.; (2) attempted first degree murder — after deliberation as to S.E.; and (3) the lesser nonincluded offenses.

## II.  Sequestration

¶ 10     Defendant first contends that the trial court erred when it allowed R.B.'s mother and brother, who were witnesses for the

prosecution, to be present during testimony at defendant's preliminary hearing and trial. We are not persuaded.

### A. Standard of Review and Applicable Law

¶ 11    Decisions related to the sequestration of witnesses are reviewed for an abuse of discretion. *See People v. Cohn*, 160 P.3d 336, 346 (Colo. App. 2007).

¶ 12    Absent limited exceptions not relevant here, CRE 615 provides that upon the request of a party, the trial court shall order the exclusion of witnesses from the courtroom "so that they cannot hear the testimony of other witnesses." "The purpose of a sequestration order is to 'prevent a witness from conforming his [or her] testimony to that of other witnesses and to discourage fabrication and collusion.'" *People v. Villalobos*, 159 P.3d 624, 629 (Colo. App. 2006) (alteration in original) (citations omitted).

¶ 13    However, article II, section 16a of the Colorado Constitution provides that "surviving immediate family members . . . shall have the right to be heard when relevant, informed, and present at all critical stages of the criminal justice process." The legislature has codified this right in part 3 of title 24, article 4.1 (the Victims' Rights Act), and section 24-4.1-302.5(1)(b), C.R.S. 2016, states that

victims have "[t]he right to be informed of and present for all critical stages of the criminal justice process as specified in section 24-4.1-302(2)." *See also People v. Coney*, 98 P.3d 930, 935 (Colo. App. 2004). As relevant here, section 24-4.1-302(2), C.R.S. 2016, defines "critical stages" to include preliminary hearings and the defendant's trial.

¶ 14     Although "CRE 615 does not provide authority for departing from the constitution and statute," *Coney*, 98 P.3d at 935, section 24-4.1-303(6)(a), C.R.S. 2016, states that "[a] victim . . . may be present at all critical stages of a criminal proceeding regarding any crime against such victim *unless the court* or the district attorney *determines that exclusion of the victim is necessary to protect the defendant's right to a fair trial.*" (Emphasis added.)

## B. Discussion

¶ 15     Based on our review of the record, we discern no abuse of discretion by the trial court in allowing R.B.'s mother and brother to be present during testimony at defendant's preliminary hearing and trial.

¶ 16     Initially, we note that R.B.'s mother and brother are both included in the statutory definition of a "victim" under the Victims'

Rights Act. § 24-4.1-302(5). And because the Victims' Rights Act represents a decision on a matter of public policy — here, that R.B.'s mother and brother have a right to be present during the trial of her accused killer — the statute controls over CRE 615. *See People v. Wiedemer*, 852 P.2d 424, 436 (Colo. 1993) ("In drawing the distinction between substance and procedure, we have held that in general, rules adopted to permit the courts to function and function efficiently are procedural whereas matters of public policy are substantive and are therefore appropriate subjects for legislation."); *see also People v. McKenna,* 196 Colo. 367, 372-73, 585 P.2d 275, 278-79 (1978) (on substantive matters, a statute controls over a rule promulgated by the court); *Coney*, 98 P.3d at 935.

¶ 17    Nonetheless, as defendant points out, section 24-4.1-303(6)(a) provides a trial court with authority to exclude a deceased victim's family members if it "determines that exclusion . . . is necessary to protect the defendant's right to a fair trial." However, while defendant is correct that the court had authority to exclude R.B.'s mother and brother, the trial court determined that such exclusion *was not necessary* in this case. And based on the reasons given by

defense counsel for the need to exclude the witnesses, we discern no abuse of discretion by the trial court in reaching that decision.

¶ 18    At the preliminary hearing, defense counsel contended that R.B.'s mother and brother should have been excluded from the courtroom because they were not collateral witnesses and because "we'll probably learn through the course of th[e] hearing through the D.A. investigator . . . that there ha[d] been a lot of rumors and information being exchanged between various witnesses." The prosecutor responded that she did not "know what [defense counsel] [wa]s referencing in that last portion" and asked that R.B.'s mother and brother be allowed to remain in the courtroom for the preliminary hearing. Because the family members were not scheduled to testify at the hearing, and in light of "the mandate contained in the Constitution permitting the family to remain in the courtroom," the court, relying on *Coney*, allowed R.B.'s family to remain.

¶ 19    The court and the parties revisited the issue at trial. Citing *Coney* for the proposition that victims have a right to be present during trial, the court asked defense counsel, "And I guess what I don't know from the defense is, what is your specific objection if

7

they are here?  I'm assuming there are police reports.  But did you have a specific objection or is there an order that we can do?"  The following colloquy then occurred:

> [Defense counsel:] Your Honor, I just — Your Honor, I am just concerned about witnesses, any witnesses watching testimony of other witnesses and discussing that testimony with other witnesses.
>
> . . .
>
> [Court:] And so you're just concerned that they might talk to each other about the witnesses or what are you concerned about specifically?
>
> [Defense counsel:] Yes.  I am concerned about talking about testimony that they've observed and seen with other witnesses who may testify.
>
> [Court:] And I can admonish them.  But what is the prosecution's position?
>
> [Prosecutor:] They've been instructed to that part of the sequestration order, that that would apply to them and they're not to discuss either their own testimony or anything that they would hear.

¶ 20     In ruling on defense counsel's request, the court stated that in "balancing . . . the victim's constitutional right and the defendant's constitutional right to due process," it would allow R.B.'s mother and brother to watch the trial.  However, the court gave both the following admonishment:

Whatever you hear in the courtroom, you cannot tell anyone else, and that's an order of the Court which is subject to contempt. And so you can't go home at night and tell others, especially those other people that might testify.

And I would ask you not to talk at all to anyone about the testimony you hear during these two weeks, because that could go through a chain and then somebody that may testify could hear it from a third party that you've told. So I'm going to ask that you do not discuss anything you heard in the courtroom with anyone else until this trial is over.

And under that scenario, I will allow you then to sit through the trial.

¶ 21 The court then asked both witnesses if they understood its order, and both replied that they did.

¶ 22 In this case, defense counsel was unable — at either the preliminary hearing or defendant's trial — to articulate any specific grounds raising concerns that the witnesses would conform their

testimony.[1]  And although appellate counsel offers portions of the mother's and brother's testimony that are similar to other witnesses' testimony, the trial court had not heard *any* trial testimony at the time it made its ruling.[2]

¶ 23    Lastly, we note that to the extent the mother's or brother's trial testimony was different from the account they gave in their reports to police, defendant had access to those reports and was free to impeach the witnesses on that basis.

¶ 24    In sum, in light of (1) defense counsel's failure to identify any specific grounds raising concerns about conforming testimony; (2) the court's admonishment, which we presume the witnesses

---

[1] In light of the record, even if we assume that we should apply the various balancing tests applied by other courts, we would reach the same result.  *See, e.g.*, *In re Mikhel*, 453 F.3d 1137, 1139 (9th Cir. 2006) (per curiam) ("[Under the Federal Crime Victim's Rights Act,] [a] district court may exclude a victim-witness from the courtroom if the court finds by '*clear and convincing evidence . . . that testimony by the victim would be materially altered* if the victim heard other testimony at that proceeding.'") (emphasis added) (citation omitted); *Gabriel v. State*, 925 P.2d 234, 236 (Wyo. 1996) (in considering whether to allow an exception to the rule requiring courts to grant a defendant's motion to sequester witnesses, "the standard is *whether good cause is shown* that the exemption should not be granted") (emphasis added).

[2] In any event, as defendant acknowledges, similar testimony may simply have resulted from the witnesses perceiving the events in the same way.

understood and followed, *see, e.g., People v. Rhea*, 2014 COA 60,
¶ 68; and (3) defendant's opportunity to cross-examine the
witnesses, we discern no abuse of discretion by the trial court in
allowing R.B.'s mother and brother to be present during testimony
at defendant's preliminary hearing and trial.

### III. Basketball Analogy

¶ 25    Defendant next contends that the trial court committed
reversible error when it used a basketball analogy to explain to the
jury the law of intoxication. We are not persuaded.

### A. Additional Background

¶ 26    During voir dire, defense counsel questioned jurors about an
intoxication defense, at which point several jurors expressed their
opinion that a defendant, even if intoxicated, is nonetheless
responsible for his or her actions. For instance, defense counsel
asked a juror, "What about a situation where somebody is . . .
charged with actually killing somebody with intent and after
deliberation, causing the death of another person and that they
claim I'm not responsible because I didn't mean to do it because I
was so drunk." The juror responded,

11

> Well . . . there are different types of murder: [f]irst-degree murder, you know, manslaughter, things like that, so it might lessen the ultimate charge or what they're charged with. But I do believe they're responsible for their actions. If it's the drinking that causes them to commit the murder, then they're responsible for the drinking to begin with.

¶ 27 After a number of similar questions and answers, the trial court interjected and told the jurors that "[w]e're not trying to ask, do you like the law or do you hate the law or, in this situation, what do you think about that law or that law? It's just really, whatever it is, can you follow the law?" After more of the same questioning, the trial court provided the jury with the following analogy:

> The law of intoxication. If we are at a [basketball] game. Say you're shooting — you're running down the court trying to make a basket and you jump up and you made a shot. You intended, at that point, to make a basket, right?

> All right. And so, if you have the intent to make the basket and you jump up and do it. By doing that, you're showing you have that intent.

> If you are intoxicated, as a jury, as you believe that the person is running down in the basketball game is so intoxicated, you have to decide if they're so intoxicated about they — whatever the evidence you hear, that they can

12

no longer have that intent to shoot the basket because they're so intoxicated. So it's just one of the elements that the prosecution has to prove.

And I don't — I don't want to go through all the legal parts of it. And as I said, we don't know what the evidence is going to be. We don't even know if it's going to be brought up. I don't know. But generally, it just goes to the intent. It's one of the elements the prosecution will have to show.

## B. Discussion

¶ 28 Defendant contends that "[t]he court told the jurors they would need to, in essence, determine whether that player had 'that intent to *shoot the basket,*' or not due to intoxication." In doing so, defendant continues, the court "left out entirely the question of whether the player had intended to *make the basket* or not." Defendant asserts that in failing to make this distinction, the court informed the jury that it should be concerned with whether defendant "*acted* intentionally, not whether he intended to *cause* R.B.'s death."

¶ 29 As an initial matter, the jury did not necessarily parse the court's comments in the same manner as, and draw the same conclusions that, defendant does on appeal. Furthermore, as the

13

Attorney General points out, the court, in its initial analogy, said, "You intended, at that point, to make a basket, right?"  In light of this initial comment, it is possible that the jury interpreted the court's analogy to mean that intoxication, under appropriate circumstances, could have negated the hypothetical shooter's intent to "make" the basket.

¶ 30    But even if the trial court's analogy constituted error, reversal would not be required under the plain error standard of review.  *See People v. Carter*, 2015 COA 24M, ¶ 13 (assuming without deciding that the trial court's reasonable doubt analogy was erroneous, but concluding that such an error did not require reversal under the plain error standard).

¶ 31    To establish plain error, defendant must show that the putative error was both obvious and so substantial that it undermined the fundamental fairness of the trial itself, casting serious doubt on the reliability of the judgment of conviction. *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005).  We conclude that defendant has failed to establish that the court's error, if any, was substantial.

¶ 32    First, as defendant acknowledges, at the close of evidence, the trial court correctly instructed the jury that (1) "[t]he evidence presented . . . has raised the question of self-induced intoxication with respect to the offense of Murder in the First Degree, and Criminal Attempt[ed] Murder in the First Degree"; (2) it could "consider whether or not evidence of self-induced intoxication negates the existence of the elements of 'after deliberation and with intent'"; (3) "[t]he prosecution has the burden of proving all the elements of the crimes charged beyond a reasonable doubt"; and (4) if it found "the defendant was intoxicated to such a degree that he did not act with the required mental state, you should find him not guilty of that offense." We presume the jury understood and followed the trial court's instructions, and nothing in the record rebuts that presumption. *See Carter*, ¶¶ 58-59 (assuming the trial court's use of a puzzle analogy to explain reasonable doubt was erroneous, the division concluded that reversal was not required under the plain error standard because the court correctly instructed the jury on the definition of reasonable doubt); *see also People v. Baca*, 2015 COA 153, ¶¶ 13-14 (same); *People v. Boyd*, 2015 COA 109, ¶¶ 12-13 ("[A]ny risk of prejudice here was

15

mitigated by the court's written jury instructions, which correctly articulated the burden of proof and the presumption of innocence and which we presume the jury understood and correctly applied.") (*cert. granted* Mar. 21, 2016); *People v. Estes*, 2012 COA 41, ¶ 12 (same).

¶ 33     Second, the trial court began its analogy by referencing the shooter "mak[ing] a basket," and it ended its analogy by telling the jury that intoxication "generally . . . goes to the intent," which is "one of the elements the prosecution will have to show."  Thus, as we set forth above, it is possible that the jury interpreted the court's analogy to mean that defendant's intoxication could have negated his specific intent to cause R.B.'s death.

¶ 34     Lastly, as the Attorney General notes, during closing arguments, the parties focused on the court's correct self-induced intoxication instruction, rather than on the allegedly erroneous basketball analogy.

¶ 35     For all of these reasons, any error in the trial court's analogy would not be so substantial that it would undermine our confidence in the reliability of the judgment of conviction.  *See Miller*, 113 P.3d at 750.

## IV. Cross-Examination

¶ 36    Defendant last contends that the trial court erred in precluding his counsel from asking a prosecution witness, Amanda DeLeon, whether S.E. had smoked marijuana on the day of the attempted murder.  We are not persuaded.

### A. Additional Background

¶ 37    Before trial, defendant filed a motion in limine asking the court to bar the prosecution from introducing evidence of his drug use.  At a hearing on the motion, the prosecution stated that it did not intend to introduce such evidence.  However, it noted that it planned to offer for admission photos of defendant's apartment, and that a number of those photos "contain[ed] numerous bongs."

¶ 38    While the parties and the court discussed how to resolve this problem, defense counsel stated that she might seek to question prosecution witnesses about their alleged drug use, contending that such evidence was relevant to the witnesses' credibility.  When the court asked how that information was relevant to credibility, counsel responded that the witnesses' alleged drug use at the time of the events about which they would testify could have altered the witnesses' ability to perceive and recall the events.  Referring to

17

R.B.'s murder, the court agreed, saying, "I understand for the night of the incident, that would be relevant for everybody that was there if anybody is going to testify about what happened."

¶ 39    The prosecution called the attempted murder victim, S.E., on the fifth and sixth days of trial. On direct examination, she said that defendant had strangled her and did not stop doing so until her friend, DeLeon, forced her way into S.E. and defendant's bedroom and pulled defendant off of her. Although defense counsel impeached S.E.'s credibility during cross-examination, she did not ask S.E. whether she had been under the influence of marijuana on the day of the attempted murder.

¶ 40    The prosecution then called DeLeon. During the prosecutor's direct examination, DeLeon said that she did not remember a number of the details of the incident as she had previously represented them in an interview with the police. For instance, DeLeon initially told the police that she heard S.E. screaming for help and, in response, she (or another individual who was present at the time) forced her way into the bedroom and pulled defendant off of S.E. During her direct examination, however, she said that she only remembered defendant sitting on S.E. to stop S.E. from

18

scratching and hitting him; she did not remember (1) the couple arguing in the bedroom; (2) S.E. calling for help; or (3) forcing her way into the bedroom. The prosecutor ended her questioning by asking DeLeon if she had been smoking marijuana on the day of the attempted murder, and DeLeon responded that she had.

¶ 41 During cross-examination of DeLeon, defense counsel asked whether DeLeon had been smoking marijuana with S.E. on the day in question. The prosecutor objected, contending that it was an improper question because "[y]ou can ask this witness about her ability to perceive, but you can't ask her to comment on another witness' ability to perceive . . . [s]he can't comment on that because that's not for this witness." Defense counsel responded that she was "not asking her to make a comment on [S.E.'s] ability to perceive. I'm asking her to say whether or not she was smoking marijuana or not, and the jury can determine whether it's relevant to her credibility or not." The trial court asked defense counsel a follow-up question: "[I]f you're not asking whether or not it affected her ability to perceive, why is it relevant?" Counsel replied that "that's a determination for the jury to make, Judge. It's not a determination for Ms. DeLeon to determine whether it affects other

19

people. . . . How could she determine if it affected [S.E.'s] ability. The fact that she was using drugs goes to her credibility."

¶ 42     Ultimately, the trial court sustained the objection. It reasoned that

> [i]f defense had asked . . . the victim, [S.E.], whether she was smoking marijuana at the time this occurred, I think that would be relevant because then they can talk about whether her perceptions were different or whatever. It's only relevant if you can say that by smoking marijuana, it's affected her like she said been smoking all day or been smoking for three days, or whatever. But right now, what is the jury going to be left with?
>
> The jury will be left with your scenario that she had issues with smoking marijuana. They won't know how much or her perception because there's nobody here to testify what that was like. It's just going to hang out there. And that's why we did the motion in limine ahead of time because if you want [to] bring it up, if you want to do this, you can't do it through impeachment, but you can bring it up in your case-in-chief.
>
> . . .
>
> I just don't find that that's going to be relevant at this point. And I think it just goes to her character without any basis.

## B. Standard of Review

¶ 43    Trial courts are vested with broad discretion regarding the admissibility of evidence, *see, e.g.*, *People v. Manyik*, 2016 COA 42, ¶ 83, and the extent and type of cross-examination they will allow, *People v. Silva*, 987 P.2d 909, 918 (Colo. App. 1999).  Accordingly, we will not disturb a trial court's decision regarding such matters absent an abuse of discretion.  *Manyik*, ¶ 83.  To establish an abuse of discretion, a defendant must show that the trial court's decision was manifestly arbitrary, unreasonable, or unfair, or was based on a misunderstanding or misapplication of the law.  *Id.* at ¶ 65.

¶ 44    Defendant preserved the contention he now raises on appeal, so we apply the harmless error standard to determine if reversal is required.  *See Merritt v. People*, 842 P.2d 162, 166-67 (Colo. 1992).

## C. Applicable Law

¶ 45    "All relevant evidence is admissible, except as otherwise provided by" the United States or Colorado Constitutions, statute, or other rule.  CRE 402; *see also Yusem v. People*, 210 P.3d 458, 463 (Colo. 2009).  And evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence." CRE 401.

¶ 46     "[W]hether the witness was, at the time of the events as to which he testifies, under the influence of some drug that could have affected his perception of those events bears directly on credibility." *People v. Dunham*, 2016 COA 73, ¶ 27. This type of evidence is generally relevant, then, because "reasonable inquiry regarding matters probative of the credibility of [a] witness is always relevant on cross-examination." *People v. Mandez*, 997 P.2d 1254, 1267 (Colo. App. 1999).

¶ 47     However, under CRE 403, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

¶ 48     Consistent with CRE 403, "a trial court has wide latitude, insofar as the Confrontation Clause is concerned, to place reasonable limits on cross-examination based on concerns about, for example, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation which is repetitive or only

marginally relevant." *Merritt*, 842 P.2d at 166. But a trial court should not excessively limit a defendant's cross-examination of a witness regarding the witness's credibility. *Id.*

### D. Discussion

¶ 49    As an initial matter, we agree with defendant that evidence of S.E.'s alleged marijuana use on the day of the attempted murder was relevant. *See Dunham*, ¶ 27. We do not agree, however, that the trial court abused its discretion in precluding defense counsel from asking one witness, DeLeon, whether *another witness*, S.E., was under the influence of marijuana on the day in question.

¶ 50    Although the court did not precisely identify CRE 403 in ruling on the prosecutor's objection, the reasons it articulated for precluding defense counsel's question suggests that the court viewed the probative value of DeLeon's expected answer as being outweighed by the danger of unfair prejudice and misleading the jury. And that conclusion — which we agree with — was based on the procedural posture in which the question was asked.

¶ 51    Evidence of a witness's drug use is relevant *because* it bears on a witness's perception and memory of an event about which the witness is testifying. *See Dunham*, ¶ 27; *see also People v. Roberts*,

23

37 Colo. App. 490, 491, 553 P.2d 93, 94 (1976) (noting that it is improper to question a witness about his or her drug addiction "merely for purposes of attacking the credibility of the witness").

¶ 52     In this case, defense counsel had a prior opportunity to ask S.E. whether or not she had been under the influence of marijuana on the day in question.  She did not do so.  Instead, she asked a different witness, DeLeon, that question.  And although DeLeon could have given a simple yes or no answer, as the trial court noted, and defense counsel acknowledged, DeLeon could not have spoken to the impact of the alleged marijuana consumption on S.E.'s perceptions or memory.  Thus, based on the procedural posture in which defense counsel's question was asked, DeLeon's answer would have had little, if any, probative value.

¶ 53     In contrast, DeLeon's expected answer carried with it the danger for unfair prejudice and misleading the jury.  As the trial court concluded, absent any testimony connecting S.E.'s putative marijuana consumption to her perception of, or ability to remember, the events in question, the "jury w[ould] be left with [counsel's] scenario that she had issues with smoking marijuana. . . .  It's just going to hang out there."  In other words,

without an explanation of the effects of the marijuana on that particular day, there was a danger that the jury would infer that (1) S.E. was a drug user; and (2) because she was a drug user, her testimony was generally less credible. And such an inference would have been improper because evidence of a witness's "purported drug addiction" is inadmissible "merely for purposes of attacking the credibility of the witness." *Roberts*, 37 Colo. App. at 491, 553 P.2d at 94.

¶ 54 The propriety of the court's CRE 403 ruling is reinforced by its statement to counsel that "if you want to do this, you can't do it through impeachment, but you can bring it up in your case-in-chief." This statement acknowledges that the probative value of the evidence of drug use would have been higher if the question had been asked of S.E., who would then have had an opportunity to explain the effect of any such drug use on her perception of, and ability to remember, the attempted murder.

¶ 55 In sum, based on the procedural posture in which it was asked, we discern no abuse of discretion by the trial court in precluding defense counsel from questioning DeLeon about S.E.'s alleged marijuana use.

## V. Conclusion

¶ 56    The judgment is affirmed.

JUDGE TERRY and JUDGE BERGER concur.