Opinion by JUDGE GRAHAM
¶ 1 Defendant, Coleman Backstrom Stewart, appeals the judgment of conviction entered on jury verdicts finding him guilty of felony menacing and misdemeanor obstructing a peace officer. We conclude that there were a number of errors in the trial proceedings-two of them standing alone might serve as the basis for reversal, but collectively they clearly require that we reverse the conviction and remand for a new trial.
I. Background
¶ 2 When an impetuous youth runs from police, good things rarely result. This case is just such a circumstance.
¶ 3 Inebriated, defendant took a cab from a friend's house and refused to pay his $4.85 cab fare. Rather than deliver defendant to his desired destination, the cab driver, apparently suspecting that defendant would not pay his fare, stopped near a police station. Defendant jumped from the cab and ran, with the cab driver in pursuit. The cab driver alerted a nearby police officer who shouted at defendant and also gave chase. Defendant ran to his apartment and then appeared behind his window blinds with a plastic BB gun. Officers, who had entered defendant's gated patio, opened fire, and defendant suffered two gunshot wounds.
¶ 4 The evidence at trial showed that defendant's apartment was surrounded by a six-foot privacy fence that was locked. The apartment air conditioner was running at a high noise level. The fence enclosed defendant's private patio and was not accessible to other residents of the building. At least one police officer scaled the fence and then opened the gate for remaining officers to enter the patio. It was after the officers breached the fence that they saw defendant with the BB gun and, believing the gun to be real, commenced firing.
¶ 5 Prior to trial, defendant filed a motion to dismiss the charges against him on grounds that "outrageous government conduct" in violation of his Fourth and Fifth Amendment rights barred prosecution. U.S. Const. amend. IV ; U.S. Const. amend. V. The motion also sought to suppress all evidence obtained by the police after their illegal entry onto his property. The trial court denied the motion without holding a hearing or issuing a detailed order.[1]
*886 ¶ 6 A jury convicted defendant of felony menacing and obstructing a peace officer. The trial court sentenced defendant to probation.
II. Evidentiary Errors
¶ 7 All relevant evidence is admissible unless otherwise prohibited by law. CRE 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401.
¶ 8 When a defendant objects to the admission of evidence, we review for harmless error. People v. Garcia , 28 P.3d 340, 344 (Colo. 2001). If the error is not one of constitutional dimension, the defendant bears the burden of showing prejudice from the error. People v. Vigil , 718 P.2d 496, 500 (Colo. 1986) ; People v. Casias , 2012 COA 117, ¶ 60, 312 P.3d 208. We will reverse if the error "substantially influenced the verdict or affected the fairness of the trial proceedings." Tevlin v. People , 715 P.2d 338, 341-42 (Colo. 1986).
A. Refreshing Recollection Evidence
¶ 9 Whether defendant was aware that a police officer was chasing him after he jumped from the cab was hotly disputed. The prosecutor sought to establish that the officer had yelled at defendant and identified himself as a police officer. The prosecution's first witness had seen some of the chase, but she had only a vague recollection of events when she was called to the witness stand for direct examination. Rather than asking an open-ended question, the prosecutor asked: "And if you told the officer at the time that you heard 'stop police' would that be accurate?" Defense counsel objected to the leading question, but the trial court overruled the objection because it was "being used to refresh recollection." Defense counsel sought leave to approach the bench to make further argument, but the trial court denied the request. The witness then responded: "Yes, I think anything I said to him would have been accurate."
¶ 10 The prosecutor's question placed words in the witness's mouth-words that were critical in evaluating the defense that defendant was not aware he was being chased by a police officer. CRE 611(c) prohibits leading questions on direct examination, and CRE 612 permits refreshing recollection only in limited circumstances and following a particular procedure.
¶ 11 The court's ruling was in error not only because the prosecution was leading the witness but also because it violated CRE 612. That rule deals with situations where a witness indicates a lack of recollection and has his or her recollection refreshed with a writing. No writing was introduced in this instance. Nor was this question proper impeachment because no foundation was laid. See CRE 613 (stating that denial or failure to remember the prior statement is a prerequisite for the introduction of extrinsic evidence to prove a prior inconsistent statement); see also § 16-10-201, C.R.S. 2016. Here, the prosecutor did not attempt to call the witness's attention to a prior inconsistent statement. Instead, the prosecutor simply told the witness what the prosecutor wanted to prove.
¶ 12 Under circumstances where defendant's awareness of the presence of police was both disputed and pivotal to his defense, we cannot conclude that this error was without prejudice. The witness's answer could easily give a jury the impression that defendant was aware from the outset that he was being chased by police. Furthermore, although defense counsel was able to elicit from the witness during cross-examination that she did not in fact tell the investigator she had heard the officer yell "stop police," the prosecutor nevertheless referenced this statement as though it was a proven fact multiple times during trial.
¶ 13 And we do not agree that evidence of defendant's menacing was overwhelming. His appearance behind blinds at the window with his BB gun was fleeting, and the jury could have believed that he was not intending to menace the police but instead he was in fear of the cab driver.
¶ 14 But, on balance, although we conclude that this error was prejudicial, we cannot conclude that it, standing alone, "substantially influenced the verdict or affected the fairness of the trial proceedings."
*887 Tevlin , 715 P.2d at 341-42. Thus, it is harmless in the sense that this error, in isolation, does not require reversal, although it substantially contributes to the cumulative error determination discussed in Part V below.
B. CRE 404(b) Evidence
¶ 15 Defendant objected to the introduction of evidence of a 2010 incident in Kansas, where he hid from police under a parked car, as improper character evidence. The trial court initially agreed the evidence should be excluded unless defendant "were to testify that he did not know police were after him or trying to contact him."
¶ 16 Defendant did not testify at trial, but the court ruled that he had opened the door to this evidence by suggesting through argument and examination of witnesses that he did not knowingly menace police because he was unaware that police were on his patio. Thus, the court admitted the evidence for the limited purpose of rebutting "any allegation of accident or mistake" on the part of defendant. In rebuttal, the People introduced the testimony of two police officers from Kansas who found defendant hiding under a parked car after responding to a report of possible car break-ins.
¶ 17 On appeal the People contend this evidence does not implicate CRE 404(b) because it was "admitted to show that [defendant] had previous experience with law enforcement," "not ... to show that, because [defendant] hid from an officer on a previous occasion, he acted in conformity with that character in this case in knowingly resisting arrest." We disagree.
¶ 18 CRE 404(b) addresses evidence of "other crimes, wrongs, or acts." The Kansas incident several years prior to the charges in this case is clearly evidence of other crimes, wrongs, or acts. Indeed, during trial the prosecutor, defense counsel, and the trial court all agreed this evidence implicated CRE 404(b).
¶ 19 Evidence of prior acts is admissible if the acts (1) relate to a material fact; (2) are logically relevant; (3) have a logical relevance "independent of the intermediate inference, prohibited by CRE 404(b), that the defendant has a bad character" and committed the crime charged because he acted in conformity with that bad character; and (4) have a probative value that is not substantially outweighed by the danger of unfair prejudice. People v. Spoto , 795 P.2d 1314, 1318 (Colo. 1990).
¶ 20 We review a trial court's decision to admit other acts evidence for an abuse of discretion. People v. Harris , 2015 COA 53, ¶ 14, 370 P.3d 231. " CRE 404(b) does not always require similarity between a defendant's prior act and the charged offense." Casias , ¶ 46 (citing Yusem v. People , 210 P.3d 458, 467 (Colo. 2009) ). But when proving lack of accident or mistake, "[t]he uncharged act should closely parallel the charged act," and "[i]f the acts are similar in material respects, the similarity justifies the admission of the acts to disprove innocent intent." Id. (alterations in original) (quoting 1 Edward J. Imwinkelried, Uncharged Misconduct Evidence § 5:08, at 25 (2009)); accord Harris , ¶ 24.
¶ 21 Here, the evidence related to the material fact of defendant's mens rea. See Casias , ¶ 36 ("Other bad acts evidence is admissible to prove a defendant's knowledge ... when ... the other bad acts tend to prove the requisite knowledge by virtue of the doctrine of chances."). Yet the evidence had little logical relevance to the material fact at issue; that is, the fact that defendant hid from police on a prior occasion did not make it more or less likely that he knew police were chasing him on this occasion.
¶ 22 But even if we were to conclude that this evidence has slight logical relevance-"that [it] has any tendency to make the existence of the material fact more or less probable than without the evidence," Yusem , 210 P.3d at 464-65 -because defendant's prior contact with police may make it more probable he knew he was dealing with police in this instance, we are unpersuaded that such relevance is independent of the inference prohibited by CRE 404(b).
¶ 23 Indeed, the prosecutor did not state a precise evidentiary explanation of how the 2010 incident proved defendant's mens rea in this case-apart from his propensity to hide from the police. A jury could not reasonably conclude that defendant was more likely to know he was being chased by police in this *888 case without relying on the inference that he hid from police in the past and so he is likely to hide from them again. This is the very type of impermissible inference prohibited by CRE 404(b). See Yusem , 210 P.3d at 464.
¶ 24 Nor can we conclude that this error was harmless. Propensity evidence always has a potential for unfair prejudice. Perez v. People , 2015 CO 45, ¶ 28, 351 P.3d 397. The unfair prejudice to defendant was not outweighed by any probative value we are able to discern in the 2010 incident. Indeed, in our view, that evidence was irrelevant to any issue at trial other than the habit and character of defendant. Because defendant contended that he was unaware that he was disobeying officers, this prior incident certainly presented an opportunity for the jury to believe that defendant was aware of the pursuing police here and sought to hide from them. The prosecutors' closing arguments highlighted the 2010 evidence, urging the jurors to use it to infer that defendant knew the police were outside the apartment when he appeared at the window with his BB gun. One prosecutor went so far as to say in closing that the 2010 incident proved that defendant "knew" the officers were looking for him because "he's run before." We conclude that the error prejudiced defendant and affected the fairness of the proceedings. Although this would likely be a sufficient basis for reversal, when it is considered in the context of the other errors we perceive, as we hereafter conclude, they collectively require reversal.
III. Jury Instruction Error
¶ 25 Over defendant's objection, the trial court gave the jury an instruction stating: "An officer may pursue a fleeing suspect even in to that person's home."
¶ 26 "A trial court must correctly instruct the jury on all matters of law applicable to the case." People v. Mendenhall , 2015 COA 107M, ¶ 14, 363 P.3d 758. "We review de novo whether instructions accurately informed the jury of the law." People v. Garcia , 2017 COA 1, ¶ 7, --- P.3d ----. "[C]ontentions of instructional error are preserved when a party objects to an instruction or requests a specific additional or alternative instruction." Mendenhall , ¶ 21. Preserved instructional errors that do not implicate constitutional rights are reviewed for harmless error. People v. Castillo , 2014 COA 140M, ¶ 24, --- P.3d ---- (cert. granted Nov. 23, 2015). Such an error, however, does not require reversal if we can determine that there is no reasonable probability that it contributed to the jury's guilty verdict. Krutsinger v. People , 219 P.3d 1054, 1063 (Colo. 2009).
¶ 27 "[I]t is error for a court to instruct the jury in a manner that invites confusion." People v. Stellabotte , 2016 COA 106, ¶ 25, --- P.3d ---- (quoting Steward Software Co. v. Kopcho , 275 P.3d 702, 711 (Colo. App. 2010) ) (cert. granted Feb. 6, 2017). And "[an] instruction ... should not assume facts not supported in some manner by the record." People v. Tenneson , 788 P.2d 786, 799 (Colo. 1990).
¶ 28 There are three situations in which exigent circumstances justify warrantless entry onto private property:
(1) the police are engaged in a "hot pursuit" of a fleeing suspect; (2) there is a risk of immediate destruction of evidence; or (3) there is a colorable claim of emergency threatening the life or safety of another. The scope of the permissible intrusion is determined by the exigency justifying the initiation of the warrantless entry.
People v. Aarness , 150 P.3d 1271, 1277 (Colo. 2006) (citation omitted).
¶ 29 The People argue on appeal that the instruction correctly stated the law, but they cite to a Utah case to support the instruction. See State v. Hamilton , 710 P.2d 174, 175 (Utah 1985) (A warrantless entry was justified where an officer "was literally in 'hot pursuit' of a person who had been observed committing an offense, albeit a minor one."). During oral argument, the People argued that the instruction was correct because it contained the term "may" and therefore, according to the People, did not categorically state it was acceptable for officers to pursue a fleeing suspect into that person's home.
¶ 30 Meanwhile, relying on federal precedent, defendant argues that the instruction was error because a police officer may not *889 pursue a fleeing suspect into a home when the suspected offense is a misdemeanor (much less a petty offense, as defendant's failure to pay the cab fare was here). See Mascorro v. Billings , 656 F.3d 1198, 1207 (10th Cir. 2011) ("The warrantless entry based on hot pursuit was not justified" where "[t]he intended arrest was for a traffic misdemeanor committed by a minor."); see also Stanton v. Sims , 571 U.S. 3, 6, 134 S.Ct. 3, 5, 187 L.Ed.2d 341 (2013) ("[F]ederal and state courts nationwide are sharply divided on the question whether an officer with probable cause to arrest a suspect for a misdemeanor may enter a home without a warrant while in hot pursuit of that suspect.") (collecting cases); Mendez v. People , 986 P.2d 275, 283 (Colo. 1999) (discussing Welsh v. Wisconsin , 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), and the important factor of the "gravity of the offense" in determining exigent circumstances, but not resolving whether a misdemeanor crime can justify warrantless entry into a private residence).
¶ 31 We are unable to determine the relevance of this instruction. First, nothing in the record suggests that the officers pursued defendant into his "home." And although defendant took the position that his patio (curtilage) was part of his dwelling, there was no instruction regarding that contention. Second, it appears that the instruction was not an accurate or complete statement of the law, even if it did bear some relevance to the evidence adduced at trial. In some instances police may be entitled to pursue a fleeing suspect into his or her home; in other cases they may not. Yet the instruction, without qualification, purported to instruct the jury that in all instances the police can pursue a defendant into his or her home. Accordingly, we conclude that it was error for the trial court to give the instruction.
¶ 32 But, because the error is not of constitutional dimension, reversal is not required "if there is not a reasonable probability that the error contributed to the defendant's conviction." Garcia , 28 P.3d at 344 (quoting Salcedo v. People , 999 P.2d 833, 841 (Colo. 2000) ). At best, the instruction was certainly confusing. At worst, it was a misstatement of the law that created the impression that a determination had been made that the police conduct throughout the pursuit was lawful. But the prejudice from this erroneous instruction is contained by the fact that it does not directly tie to any issue that the jury was required to decide. Thus, while we conclude that it was error to give the instruction, "we can say with fair assurance that the error," standing alone, "did not substantially influence the jury verdict or impair the fairness of the trial." People v. Gordon , 160 P.3d 284, 288 (Colo. App. 2007) (citing Cordova v. People , 817 P.2d 66 (Colo. 1991) ). Accordingly, this error in isolation does not require reversal, but, as discussed in Part V below, it does contribute to the cumulative effect of the errors noticed on appeal.
IV. Denial of Continuance
¶ 33 A pivotal witness to the cab ride and the initial police chase was the cab driver. He was endorsed as a witness by both the prosecution and the defense and had agreed to meet with the prosecutor shortly before trial. Believing the cab driver to be a material and essential witness, the prosecutor attempted to subpoena him to no avail.
¶ 34 The defense filed a motion for a continuance to secure the cab driver's presence at trial. The court denied the motion, noting that defendant would not be prejudiced if the witness did not testify. Nevertheless, the day after denying the continuance, the court ruled that a defense subpoena could issue for the cab driver (in Florida, where he had been located) and justified approving the subpoena by stating that he was a "material witness" who was required to be at trial. Ultimately, defendant was not able to place the cab driver under subpoena prior to trial. Defendant renewed his motion for continuance, which the court again denied.
¶ 35 The denial of a motion for continuance is reviewed for an abuse of discretion. People v. Bakari , 780 P.2d 1089, 1092 (Colo. 1989). Exercising such review, we must determine whether the denial was manifestly arbitrary, unreasonable, or unfair, People v. Roybal , 55 P.3d 144, 150 (Colo. App. 2001), or a misapplication of the law, People v. Lopez , 2016 COA 179, ¶ 43, 401 P.3d 103.
*890 ¶ 36 "No mechanical test exists for determining whether the denial of a request for a continuance constitutes an abuse of discretion." Roybal , 55 P.3d at 150. The circumstances of each case and the reasons justifying a continuance must be weighed. People v. Hampton , 758 P.2d 1344, 1353 (Colo. 1988). "[A]n unreasoning and arbitrary insistence upon a trial date in the face of a justifiable request for delay can amount to an abuse of discretion...." Id.
¶ 37 In this case there were several justifiable reasons for the request and no perceivable prejudice to the prosecution in granting the request. The cab driver was unquestionably a material witness. Defendant sought to prove that the driver's frenzied driving and refusal to deliver him to his desired location justified his jumping from the cab and running. This would have helped to corroborate defendant's theory that he was running from the cab driver and not from police officers. And the error in refusing the continuance prejudiced defendant by denying him a key witness, affecting the fairness of the trial proceedings. See Hagos v. People , 2012 CO 63, ¶ 12, 288 P.3d 116. As with our conclusion with respect to the CRE 404(b) evidence, this error contributes to the cumulative effect of the various errors at trial.
V. Cumulative Error
¶ 38 Considered in isolation, each of the errors we have specified might be viewed as harmless, although two of them might well require reversal on their own. However, when we consider them in the context of a single trial, we reach the conclusion that the cumulative effect of the errors committed requires reversal of defendant's conviction. As the dissent points out, a defendant is not entitled to a perfect trial. However, he is entitled to a fair one.
¶ 39 "We will reverse for cumulative error where, although numerous individual allegations of error may be deemed harmless and not require reversal, in the aggregate those errors show prejudice to the defendant's substantial rights and, thus, the absence of a fair trial." People v. Gallegos , 260 P.3d 15, 28-29 (Colo. App. 2010).
¶ 40 One division of our court recently adopted an approach to evaluating cumulative error that has been widely used in the federal circuits. See People v. Howard-Walker , 2017 COA 81M, ¶ 111, --- P.3d ---- (citing United States v. Caraway , 534 F.3d 1290, 1302 (10th Cir. 2008) ). Following this sensible approach,
[a] court evaluates whether the total effect of errors warrants reversal based on a number of non-exclusive factors, including: the nature and number of the errors committed; their interrelationship, if any, and combined effect; how the district court dealt with the errors as they arose (including the efficacy of any remedial efforts); the strength of the government's case; and the length of the trial.
Id. at ¶ 114 (citing United States v. Baker , 432 F.3d 1189, 1223 (11th Cir. 2005) ).
¶ 41 Here, the trial errors were preserved, so the trial court had an opportunity to address them. In one instance, the trial court did not recognize the proper use of CRE 612. In another, the trial court misapplied the Spoto analysis. In still another, the trial court instructed the jury with a misstatement of the law. And, regarding the continuance, the trial court recognized the importance of an absent witness to the defense but declined to give even a short continuance to afford an opportunity to secure his presence. These errors were interrelated because they all impacted the theory of defense-namely, that defendant thought he was being pursued by the cab driver and not police officers.
¶ 42 While some might view the prosecution's case as strong, it rested on the questionable footing of the propriety of giving chase to a person who had committed a petty offense. Finally, the trial in this case was relatively short, adding emphasis to the errors.
¶ 43 Because of the numerous preserved errors committed during trial and giving consideration to the factors discussed in Howard-Walker , we are convinced defendant's substantial rights were prejudiced and that he did not receive a fair trial. Therefore, reversal of his conviction is required.
*891 VI. Conclusion
¶ 44 The judgment is reversed, and the case is remanded for a new trial.
JUDGE WELLING concurs.
JUDGE J. JONES concurs in part and dissents in part.

The trial court wrote a single sentence denying the motion: "None of the alleged facts rise to the level of outrageous government conduct." The parties dispute whether defendant preserved his Fourth Amendment claim on appeal. We conclude that he did. Although we believe that he did preserve this claim, in light of People v. Doke , 171 P.3d 237, 240 (Colo. 2007) (illegally pointing a gun at police who impermissibly enter a dwelling is a new crime that will not be suppressed under exclusionary rule), we conclude that it is unlikely that any evidence would be suppressed and because of our disposition as to numerous other claims of error, we need not address it in this opinion. But on remand, the trial court should take a fresh look at the motion should defendant renew it.